**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| VICTOR RAZUMOV,[1] | Case No. 3:16-cv-9221 (BRM) (TJB) |
|        Plaintiff, |  |
|     v. | **MEMORANDUM & ORDER** |
| STATE OF NEW JERSEY, et al. |  |
|        Defendants. |  |

**MARTINOTTI, DISTRICT JUDGE**

This matter has been opened to the Court by Plaintiff Victor Razumov's ("Plaintiff"), motion seeking reconsideration of the Court's June 30, 2020 Opinion and Order (ECF No. 112) granting in part and denying in part Defendants' second opposed Motion to Dismiss (ECF No. 93). (ECF No. 116-2.) Specifically, Petitioner seeks reconsideration of the Court's ruling granting dismissal of the failure to protect claims against Lt. Blaufuss, SCOs Henderson, Crandford, Patterson, Dunlap, Logan, Parham, Woods, and CORs Accardo[2] and Dotts ("Officer Defendants"). (*See id.*) Plaintiff also asks for "clarification that the Court's dismissal of the 'deliberate indifference claim under § 1983' refers solely to Incident #1, and not the other incidents or claims asserted." (*See id.* at 2, citing ECF No. 112 at 42.) For the reasons explained in this Memorandum

---

[1] This matter was filed by Plaintiff's parents, Maria and Victor Razumov, Sr., as Plaintiff is incapacitated. Mr. and Mrs. Razumov obtained formal guardianship on May 20, 2016. (ECF No. 101 at 19.)

[2] Defendants did not submit their second opposed motion to dismiss on behalf for SCO Accardo, explaining that SCO Accardo did not request representation from the Office of the Attorney General. (ECF No. 93-1 at 10.)

and Order, the motion for reconsideration is **GRANTED** and the failure to protect claims and deliberate indifference to medical care claims against the Officer Defendants are **REINSTATED**.

The Court notes only the facts relevant to Plaintiff's motion for reconsideration as it pertains to the Officer Defendants. In his amended complaint, Plaintiff provided alternative theories of what occurred during four distinct "incidents," three of which occurred on December 22, 2014, and one which occurred on December 25, 2014. (ECF No. 43-4 ¶¶ 84-122.)

Plaintiff provided in relevant part, that on or about November 20, 2012, he was taken into custody at the Keogh Dwyer Correctional Facility managed by Sussex County after being charged with multiple felony offenses including murder, burglary, theft, resisting arrest and unlawful possession of a weapon. (ECF No. 43-3 ¶ 29.) Plaintiff, who was eighteen years old at that time, had a known history of psychiatric disorders and was initially found unfit to stand trial by the state criminal court although he was eventually found fit to stand trial. (*Id.* ¶¶ 29-30.[3])

On or about November 27, 2012, Plaintiff was transferred to the Ann Klein Forensic Facility, where he was treated for psychosis, suicidal ideations and mental illness and discharged back to the Sussex County Jail. (*Id.* ¶ 32.) Plaintiff's alleges his Sussex County Jail records reflect that from November 2012 until October 2014, he was on extended suicide watch, protective custody and was placed in disciplinary detention for assaulting other inmates and self-injuring. (*Id.* ¶ 33.) While at Sussex County Jail, Plaintiff was on "Constant Watch" surveillance, which is a concentrated form of surveillance intended to provide immediate intervention to prevent self-harm by an inmate. (*Id.* ¶ 66.) Among other things, Constant Watch allows for uninterrupted surveillance and what some corrections facilities refer to as "arm's length" watch. (*Id.* ¶¶ 67, 69.) Following a

---

[3] On July 18, 2019, over a year after the amended complaint was filed, Plaintiff's counsel filed a letter with the Court indicating Plaintiff "has been found fit to stand trial." (ECF No. 91.)

request from the Sheriff's Department running Sussex County Jail, Plaintiff was transferred to New Jersey State Prison ("NJSP") or ABC ENTITY 1-10. (*Id.* ¶¶ 47, 49.) Plaintiff alleges that the transfer was made with the knowledge, consent and direct intervention of defendant Gary M. Lanigan,[4] who knew that constant observation including 1:1 arm's length watch was required to avoid self-harm to plaintiff and accepted the transfer on that basis. (*Id.* ¶ 49.)

On December 18, 2014, psychologist Kenneth Estepp determined Plaintiff needed to resume suicide watch and changed his status back to Constant Watch. (*Id.* ¶ 81.) Dr. Estepp described Plaintiff as "depressed and acting inappropriately by standing in the cell on a table naked holding his genitals. He was nonresponsive to officers, had flooded the cell and smeared food all over it." (*Id.*) Dr. Estepp also noted Plaintiff to be at high risk. (*Id.*) Plaintiff continued to be housed in the same cell notwithstanding his having been re-identified as needing Constant Watch. (*Id.* ¶ 82.)

Petitioner sustained eye injuries during the two incidents relevant to the instant motion for reconsideration. Plaintiff describes the two incidents at issue in relevant part as follows:

Incident # 3

102. On December 22, 2014, after being put back in [redacted], plaintiff suffered a complete rupture of the left eye, which was found out of its socket. This occurred while plaintiff was allegedly under a protocol and policy of constant watch.

103. Plaintiff had been acting bizarrely and inappropriately prior to the injury. He was seen naked in the cell with his face in the toilet and appeared to have a red and irritated face which he was washing in the toilet. Plaintiff was mumbling and refused to speak. No interventions were had by the corrections staff to provide aid, assistance or immediate 1:1 monitoring.

---

[4] Gary M Lanigan is a defendant who was classified as an "Administrator Defendant" in Plaintiff's amended complaint and who is not relevant to the motion for reconsideration at issue here. (ECF No. 43-3 ¶ 62.)

104. Plaintiff alleges that he was beaten and his eyes damaged by corrections officers. The corrections officers allege that Plaintiff inflicted the damage by self-injury, self-enucleation of the eye. The officers involved and responsible for attending to, monitoring and supervision over the plaintiff during the timeframe the injuries were sustained were Defendants Cor. M. Accardo, SCO Henderson, SCO M. Cherry, SCO Crawford-Oscar, Lt. F. Spence, Sgt. Burns, Sgt. J. Reardon, SCO Remollino, SCO Packard, PA Rodriguez, SCO J. Holmes, SCO S. Smith, SCO T. Crandford, SCO N. Santorella and Sgt. Bryant. Plaintiff is unable to ascertain which of these defendant officers were responsible for the physical abuse to which he was subjected as he cannot identify these officers by name, and relies on the records to identify these officers.

105. Officer Accardo was responsible for Constant Watch over [Plaintiff], and failed to observe blood and injury to [Plaintiff's] left eye with partial removal from the socket. Officer Accordo failed to intervene to prevent the harm which would have been preventable if proper protocol was followed regarding Constant Watch. Housing officers Henderson and Crandfort were also responsible for monitoring and direct supervision but failed to conduct their rounds and supervision in accordance with policy and protocol and, along with Officer Accardo, failed to observe and take action as Plaintiff initiated self-harm, failed to intervene to protect him, and failed to see to it that proper Constant Watch including camera and direct surveillance were being carried out in accordance with policy. These officers also failed to intervene to prevent the use of force after the defendants officers involved in incident # 3 went into the cell. Officer Remolino took Plaintiff to the ground which was unnecessary and unjustified. The records do not distinguish or identify the officers involved with securing Plaintiff in handcuffs and leg irons, noting that this was the responsibility of "the team." Accordingly Plaintiff cannot specifically identify which officers were responsible for securing him with unnecessary and excessive force and putting on handcuffs and leg irons using excessive and unnecessary force.

106. Based on the statements of all parties and review of the medical charts and records, plaintiff pleads in the alternative that he suffered rupture of the left eye by either (1) the use of excessive force by the above named or other identified or unidentified corrections officers, or (2) that Plaintiff suffered the injury by self-mutilation which was the result of severe psychosis, improperly treated by the Mental Health Defendants.

Incident # 4

113. On or about December 24, 2014 plaintiff was returned from the hospital after surgery to NJSP where he was admitted to the infirmary sometime in the early evening around 5:50 p.m. He was evaluated by both a medical doctor and Defendant Dr. Glazman. Plaintiff refused to talk and would not answer questions.

114. Dr. Glazman failed to order continuous 1:1 supervision, knowing as a trained psychiatrist that based on the prior incident of self-enucleation and growing psychosis that it was substantially likely that such an event would reoccur and that plaintiff would proceed to self-enucleate the right eye.

115. The medical staff was so concerned about the likelihood of continued self-harm that [Plaintiff] was placed in a restraint chair at approximately 9:30pm on December 24, 2014. Plaintiff remained non-verbal.

116. Plaintiff was then taken out of the chair and placed in [redacted].

117. Plaintiff was sent back to a cell despite refusal to take the Risperdol which ran down the side of his mouth. Dr. Glazman finally ordered forced medical protocol of Haldol and Benedryl by intra muscular injection which needed to be approved.

118. By around 2:00 am on December 25, 2014 plaintiff refused a vitals assessment by a nurse doing rounds.

119. At around 7:40 am on December 25, 2014 plaintiff was observed by Defendant SCO Patterson to be scratching at his right eye causing it to bleed.

120. Defendant Lt. Blaufuss had around the same time observed [Plaintiff] on the floor of his cell covered by the green suicide blanket. He was "unable" to ascertain the presence of any injuries and made no further inquiry.

121. The Defendant Officers SCO K. Dunlap, SCO G. Logan, SCO G. Parham, SCO R. Woods and Cor. E. Dotts entered the cell and used excessive and unjustifiable force in causing injury to plaintiff's right eye and in using leg irons and excessive force in transporting plaintiff out of the cell for transportation to the hospital. Plaintiff is unable to ascertain which of these defendant officers were responsible for the physical abuse to which he was subjected as he cannot identify these

> officers by name, and relies on the records to identify these officers.
> In the alternative plaintiff self-mutilated and took out his own eye.
>
> 122. Between 5:50pm and 7:45 am plaintiff did not have constant,
> continuous or 1:1 watch which was required under any adequate
> protocol designed to self-harm.

(ECF Nos. 43-3, 43-4.)

Plaintiff filed an amended complaint alleging First, Fourth, Eighth and Fourteenth

Amendment violations as well as violations as well as violations of 42 U.S.C. §§ 1981, 1983, and

1985. (ECF No. 43-3 at ¶ 22.) Petitioner also alleged violations of New Jersey state law. (*Id.* at ¶

23.)

On September 13, 2019, Defendants filed a second motion to dismiss Plaintiff's amended

complaint, which the Court granted in part and denied in part on June 30, 2020. (ECF No. 93-1.)

Relevant to the Court's discussion here, the Court considered Plaintiff's failure to protect claims

and ruled as follows:

> Plaintiff's failure to protect claims arising under 42 U.S.C. § 1983
> against Administrator Defendants Steven Johnson Stephen D'Ilio,
> Gary Lanigan, Glenn Ferguson, and Supervisory Defendants Sgt.
> Akeisha Watters, Sgt. M. Anderson, Shift Commander C. Hubert,
> Major Sanderson, Shift Supervisor Lt. S. Davis, Sgt. Samosuk, M.
> Crawford, Sgt. G. Doran, Lt. Plascenski, Sgt. Burns, Sgt. J. Reardon,
> SCO Bryant, Lt. Blaufuss, Sgt. D. Smith will PROCEED.
>
> Plaintiff's failure to protect claims against all remaining defendants
> are DISMISSED WITHOUT PREJUDICE. Plaintiff's deliberate
> indifference claim arising under 42 U.S.C. § 1983 is DISMISSED
> WITHOUT PREJUDICE in favor of all defendants.

(ECF No. 112 at 47-48.) Plaintiff seeks reconsideration of the Court's ruling dismissing the failure

to protect claim against the Officer Defendants, when the Court permitted the claim to proceed

against the Administrator and Supervisory Defendants. (ECF No. 116-2 at 1.) Plaintiff argues "the

defendants specifically responsible for monitoring Plaintiff during the times he pulled his eye out

are, for Incident #3, Officers Accardo, Henderson and T. Crandford; for Incident #4 they are Officers Paterson, Dunlap. Logan, Parham, R. Woods and Dotts, along with Lt. Blaufus." (*Id.* at 1-2.) Plaintiff also requests clarification if the Court's dismissal of the "deliberate indifference claim under § 1983" refers only to Incident # 1, and not other incidents or claims asserted. (*Id.* at 2, citing ECF 112 at 42.)

A court deciding a motion for reconsideration may alter or amend a judgment "if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café*, 176 F.3d at 677 (citing *N. River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Following a thorough review of the relevant pleadings, motions, and the Court's June 30, 2020 Opinion, the Court grants Plaintiff's motion for reconsideration and reinstates the claims for failure to protect and deliberate indifference to medical care against the Officer Defendants at issue here, Lt. Blaufuss, SCOs Henderson, Crandford, Patterson, Dunlap, Logan, Parham, Woods, and CORs Accardo and Dotts. A review of the Defendants' second opposed Motion to Dismiss reveals that Defendants' never moved to dismiss the failure to protect or deliberate indifference to medical care against the Officer Defendants listed in the motion for reconsideration. (*See* ECF No. 93-1.) The second opposed motion to dismiss only sought dismissal of the failure to protect and deliberate indifference to medical care relevant to the Administrator defendants, arguing the claims could not survive predicated solely upon a theory of *respondeat superior*. (*Id.* at 26-31.) The Court inadvertently dismissed the claims for failure to protect and deliberate indifference to medical care as to the Officer Defendants at issue here. Because Respondents did not move to dismiss the failure

7

to protect or deliberate indifference claims against the officer Defendants, those issues were not before this Court in the second opposed motion to dismiss. As such, the motion for reconsideration is granted and the failure to protect and deliberate indifference to medical care claims are reinstated against Defendants Lt. Blaufuss, SCOs Henderson, Crandford, Patterson, Dunlap, Logan, Parham, Woods, and CORs Accardo and Dotts.[5]

**IT IS THEREFORE**, on this 26th day of February 2021,

**ORDERED** Plaintiff's motion for reconsideration (ECF No. 116-2) is **GRANTED**; it is further

**ORDERED** the failure to protect and deliberate indifference to medical care claims are reinstated against Defendants Lt. Blaufuss, SCOs Henderson, Crandford, Patterson, Dunlap, Logan, Parham, Woods, and CORs Accardo and Dotts.

*/s/Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

---

[5] Because the Court has reinstated the failure to protect and deliberate indifference claims against the Officer Defendants, Plaintiff's request for clarification is moot.